**THE DISCLOSURE STATEMENT RELATED TO THIS PLAN HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT AND, UNTIL APPROVED, THIS PLAN CANNOT BE, AND IS NOT BEING, USED FOR SOLICITATION PURPOSES.**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: | Chapter 11 |
| ON MARINE SERVICES COMPANY LLC, | Case No. 20-20007-CMB |
| Debtor. | |

**PLAN OF LIQUIDATION OF ON MARINE SERVICES COMPANY LLC**
**<u>UNDER CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

Dated:  January 2, 2020

REED SMITH LLP
Paul M. Singer, Esq.
Andrew J. Muha, Esq.
Luke A. Sizemore, Esq.
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone:  (412) 288-3131
Facsimile:  (412) 288-3063
psinger@reedsmith.com
amuha@reedsmith.com
lsizemore@reedsmith.com

*Counsel to Debtor and Debtor-in-Possession*

*This Plan of Liquidation provides for an "Insurance Policy Injunction" pursuant to sections 105 and 363 of the Bankruptcy Code.  For a description of the causes of action to be enjoined and the identities of the entities that would be subject to the injunction, see Section 10.2 of this Plan.*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................ 1

SECTION 1 DEFINED TERMS, RULES OF INTERPRETATION, AND
    COMPUTATION OF TIME................................................................................. 1

A.    Defined Terms ................................................................................................ 1

B.    Rules of Interpretation ................................................................................. 11

SECTION 2 UNCLASSIFIED CLAIMS ................................................................. 12
    2.1    Unclassified Claims. ........................................................................ 12
    2.2    Administrative Expense Claims....................................................... 12
    2.3    Professional Fees. ............................................................................ 13
    2.4    Priority Tax Claims.......................................................................... 14

SECTION 3 CLASSIFICATION OF CLAIMS AND INTERESTS ......................... 14
    3.1    Summary of Classification................................................................ 14
    3.2    Special Provision Governing Unimpaired Claims............................ 14

SECTION 4 TREATMENT OF CLAIMS AND INTERESTS ................................. 14
    4.1    Class 1—Priority Non-Tax Claims.................................................. 14
    4.2    Class 2—Secured Claims. ............................................................... 15
    4.3    Class 3—General Unsecured Claims. ............................................. 15
    4.4    Class 4—Asbestos Claims. ............................................................. 16
    4.5    Class 5—Interests in the Debtor. .................................................... 16

SECTION 5 DISTRIBUTIONS TO HOLDERS OF ALLOWED NON-ASBESTOS
    CLAIMS .......................................................................................................... 16
    5.1    Distributions...................................................................................... 16
    5.2    Distribution Record Date. ................................................................ 16
    5.3    Date of Distributions........................................................................ 17
    5.4    Delivery of Distributions. ................................................................ 17
    5.5    Manner of Payment Under Plan....................................................... 17
    5.6    Withholding of Taxes. ..................................................................... 17
    5.7    Time Bar to Cash Payments............................................................. 18
    5.8    Fractional Cents. .............................................................................. 18
    5.9    No Postpetition Interest on Non-Asbestos Claims........................... 18
    5.10    Setoffs. ............................................................................................ 18

SECTION 6 PROCEDURES FOR RESOLVING DISPUTED CLAIMS................. 19
    6.1    Asbestos Claims............................................................................... 19
    6.2    Objections to Non-Asbestos Claims. ............................................... 19
    6.3    Estimation of Non-Asbestos Claims. ............................................... 19
    6.4    No Distributions Pending Allowance. .............................................. 19
    6.5    Distributions After Allowance. ........................................................ 19
    6.6    Settlement of Disputed Non-Asbestos Claims.................................. 20
    6.7    Adjustment to Claims Register Without Objection. ......................... 20

SECTION 7 TREATMENT OF EXECUTORY CONTRACTS  AND UNEXPIRED
LEASES............................................................................................................ 20
  7.1    General Treatment. ............................................................................... 20
  7.2    Rejection Claims. .................................................................................. 20
  7.3    Reservation of Rights. ........................................................................... 21
SECTION 8 MEANS FOR IMPLEMENTATION OF THE PLAN .......................... 21
  8.1    The Liquidating Trust. .......................................................................... 21
  8.2    Sources of Consideration for Distributions. ......................................... 23
  8.3    Amended Articles of Incorporation. ..................................................... 24
  8.4    Corporate Action. ................................................................................. 24
  8.5    Cancellation of Corporate Existence. ................................................... 24
  8.6    Authority of Liquidating Trust to Petition for Final Decree. ................. 24
SECTION 9 EFFECT OF CONFIRMATION ........................................................ 24
  9.1    Vesting of Assets. ................................................................................. 24
  9.2    Binding Effect. ...................................................................................... 25
  9.3    Retention of Causes of Action/Reservation of Rights. ......................... 25
  9.4    Dissolution of the Committee. .............................................................. 25
SECTION 10 EXCULPATIONS, INJUNCTIONS, AND RELEASES ..................... 25
  10.1   Exculpation. .......................................................................................... 25
  10.2   Insurance Policy Injunction. ................................................................. 26
  10.3   Release of Directors, Officers, and Shareholders. ................................ 26
  10.4   Release of Avoidance Actions. ............................................................. 26
  10.5   Terms of Injunction and Automatic Stay. ............................................. 27
  10.6   No Discharge. ........................................................................................ 27
SECTION 11 CONDITIONS PRECEDENT TO CONFIRMATION  AND
CONSUMMATION OF THE PLAN ................................................................... 27
  11.1   Conditions to the Confirmation Date. ................................................... 27
  11.2   Conditions to the Effective Date. .......................................................... 30
  11.3   Waiver of Conditions Precedent. .......................................................... 30
  11.4   Effect of Non-Occurrence of Effective Date. ....................................... 30
SECTION 12 RETENTION OF JURISDICTION .................................................. 31
SECTION 13 MISCELLANEOUS PROVISIONS .................................................. 33
  13.1   Modification of Plan. ............................................................................ 33
  13.2   Revocation or Withdrawal of the Plan. ................................................. 33
  13.3   Compromise of Controversies. ............................................................. 33
  13.4   Payment of Statutory Fees. ................................................................... 33
  13.5   Prepayment. .......................................................................................... 34
  13.6   Exemption from Transfer Taxes. ........................................................... 34
  13.7   Effective Date Actions Simultaneous. .................................................. 34
  13.8   Substantial Consummation. .................................................................. 34
  13.9   Request for Expedited Determination of Taxes. .................................... 34
  13.10  Reservation of Rights. ........................................................................... 34
  13.11  Governing Law. .................................................................................... 35
  13.12  Computation of Time. ........................................................................... 35

13.13  Successors and Assigns.........................................................................................35
13.14  Exhibits/Schedules...............................................................................................35
13.15  Entire Agreement.................................................................................................35
13.16  Severability. ........................................................................................................35
13.17  Inconsistencies. ...................................................................................................35
13.18  Notices. ...............................................................................................................36
13.19  Further Assurances...............................................................................................36
13.20  Further Authorizations. .......................................................................................36

SCHEDULE 1:  PROTECTED PARTIES

EXHIBIT A:  LIQUIDATING TRUST AGREEMENT

EXHIBIT B:  LIQUIDATING TRUST DISTRIBUTION PROCEDURES

## INTRODUCTION

ON Marine Services Company LLC, the debtor and debtor-in-possession in the above-captioned chapter 11 case, hereby proposes the following plan of liquidation pursuant to section 1121(a) of title 11 of the United States Code.

## SECTION 1
## DEFINED TERMS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

**A.    Defined Terms**

As used in the Plan, capitalized terms have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

1.1    ***Administrative Expense Claim*** means a Claim for a cost or expense of administration of the Estate under sections 503(b), 507(a)(1), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) any actual and necessary cost and expense of preserving the Estate or operating the Debtor's business incurred after the Petition Date and through the Effective Date; (b) any indebtedness or obligations incurred or assumed by the Debtor after the Petition Date and through the Effective Date; (c) any Allowed compensation for Professional services rendered, and Allowed reimbursement of expenses incurred, by a Professional retained by order of the Bankruptcy Court or otherwise Allowed pursuant to section 503(b) of the Bankruptcy Code; and (d) all fees due and payable pursuant to section 1930 of title 28 of the United States Code.

1.2    ***Administrative Expense Claim Bar Date*** means the first Business Day that is fourteen (14) calendar days after the Effective Date.

1.3    ***Affiliate*** means an affiliate, as defined in section 101(2) of the Bankruptcy Code, of the Debtor.

1.4    ***Allowed*** means:  (I) with respect to any Non-Asbestos Claim or Interest, such Non-Asbestos Claim or Interest or portion thereof against or in the Debtor:  (a) that has been listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed; (b) as to which the deadline for objecting or seeking estimation has passed, and no objection or request for estimation has been filed, or the Debtor otherwise has assented to the validity thereof; (c) as to which any objection or request for estimation that has been filed has been settled, waived, withdrawn, overruled, or denied by a Final Order; or (d) that is allowed pursuant to the terms of (i) a Final Order, (ii) an agreement by and between the holder of such Claim or Interest and the Debtor, or (iii) the Plan; and (II) with respect to any Asbestos Claim, such Asbestos Claim or portion thereof that is liquidated and allowed pursuant to the Liquidating Trust Agreement and the Liquidating Trust Distribution Procedures, or, if applicable, pursuant to a Final Order of the Bankruptcy Court.

1.5     ***Approved Insurance Settlement Agreement*** means an Insurance Settlement Agreement that has been approved by a Final Order, regardless of whether such Final Order is entered before or after the Confirmation Date or before or after the Effective Date.

1.6     ***Asbestos Claim*** means each of the following:  (a) an ON Marine Asbestos Claim; (b) a Derivative Liability Asbestos Claim; (c) an Indirect Asbestos Claim; (d) a Direct Action Asbestos Claim; and (e) a Jones Act Claim.  Notwithstanding anything to the contrary contained in the definitions of any of the foregoing terms or otherwise in the Plan, the term Asbestos Claim shall not include (i) any "demand" as such term is defined in section 524(g)(5) of the Bankruptcy Code or (ii) any Workers' Compensation Claim.

1.7     ***Asbestos Insurance Action*** means, solely as related to an Asbestos Claim, any claim, cause of action, or right of the Debtor against any Asbestos Insurance Entity related to any Asbestos Insurance Policy, including any claim, cause of action, or right arising from, under or related to:  (a) any such Asbestos Insurance Entity's failure to provide coverage or pay amounts billed to it for Asbestos Claims, whether prior to or after the Petition Date; (b) the refusal of any Asbestos Insurance Entity to pay any obligations on, or compromise and settle, any Asbestos Claim under or pursuant to any Asbestos Insurance Policy; (c) the interpretation or enforcement of the terms of any Asbestos Insurance Policy issued by an Asbestos Insurance Entity; or (d) any conduct of an Asbestos Insurance Entity constituting "bad faith" or other wrongful conduct under applicable law with respect to any Asbestos Insurance Policy.

1.8     ***Asbestos Insurance Entity*** means any Entity, including any underwriter, insurer, insurance company, broker, protection and indemnity club, or guaranty association, that has issued, or that has any actual or potential liabilities, duties, or obligations under or with respect to any Asbestos Insurance Policy.

1.9     ***Asbestos Insurance Policy*** means any Insurance Policy or portion thereof that provides or may provide coverage to the Debtor for Asbestos Claims.

1.10    ***Asbestos Insurance Rights*** means, solely with respect to an Asbestos Claim, any and all rights, titles, privileges, interests, claims, demands, or entitlements of the Debtor to any insurance coverage, defense, indemnity, proceeds, payments, escrowed funds, initial or supplemental dividends, scheme payments, supplemental scheme payments, causes of action, and choses in action with respect to any Asbestos Insurance Policy, including all Asbestos Insurance Actions, whether now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, including:

(a)     any and all rights of the Debtor to pursue or receive payment, reimbursement, or proceeds under any Asbestos Insurance Policy, whether for indemnity, liability, defense costs, or otherwise;

(b)     any and all rights of the Debtor to pursue or receive payment or proceeds under any Approved Insurance Settlement Agreement;

(c)     any and all rights of the Debtor to pursue or receive payments from any insolvent Asbestos Insurance Entity, whether in receivership, liquidation, rehabilitation, run-off,

or scheme of arrangement, or any other form of proceeding, or from any insolvent insurer's estate;

(d)      any and all rights of the Debtor to pursue or receive payments with respect to Asbestos Claims from any insurance guaranty association;

(e)      any and all rights of the Debtor to pursue or receive payment pursuant to any exception to a workers' compensation exclusion in any Asbestos Insurance Policy; and

(f)      any other rights arising under any Asbestos Insurance Policy and/or applicable law that may be necessary or useful for recovery of insurance proceeds for any Asbestos Claim.

Other than the rights identified in part (e) immediately above, Asbestos Insurance Rights shall not include any rights or obligations under any Insurance Policy, settlement agreement, or coverage-in-place agreement to which any Asbestos Insurance Entity is a party to the extent, but only to the extent, that such rights or obligations pertain solely to coverage for Workers' Compensation Claims.

1.11     *Avoidance Actions* means any avoidance or recovery action under any of sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, or under related state or federal statutes and common law, whether or not litigation has been commenced with respect to such Cause of Action as of the Effective Date.

1.12     *Ballot* means a ballot providing for the acceptance or rejection of the Plan.

1.13     *Bankruptcy Code* means title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*

1.14     *Bankruptcy Court* means the United States Bankruptcy Court for the Western District of Pennsylvania, or such other court having jurisdiction over the Chapter 11 Case or any proceeding within, or appeal of an order entered in, the Chapter 11 Case.

1.15     *Bankruptcy Rules* means, collectively:  (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Case or any proceedings therein; and (c) the local rules of the Bankruptcy Court, all as amended from time to time and applicable to the Chapter 11 Case.

1.16     *Business Day* means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

1.17     *Cash* means legal tender of the United States of America and equivalents thereof.

1.18     *Cause of Action* means any action, including any cause of action, liability, obligation, account, controversy, right to legal remedy, right to equitable remedy, right to payment, suit, debt, sum of money, damage, judgment, or claim whatsoever, whether known or unknown, now or in the future, reduced to judgment, not reduced to judgment, liquidated,

unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured, whether asserted or assertable, directly or derivatively, in law, equity or otherwise, which may be brought by or on behalf of the Debtor and/or the Estate, arising under any provision of the Bankruptcy Code or other applicable law or regulation or similar governmental pronouncement.

1.19    ***Chapter 11 Case*** means the Debtor's case under chapter 11 of the Bankruptcy Code, captioned *In re ON Marine Services Company LLC*, Case No. 20-20007-CMB, pending in the Bankruptcy Court.

1.20    ***Claim*** means a claim, as defined in section 101(5) of the Bankruptcy Code.

1.21    ***Claims Agent*** means the claims, noticing, and balloting agent in the Chapter 11 Case, Epiq Corporate Restructuring, LLC, 10300 SW Allen Blvd., Beaverton, OR 97005.

1.22    ***Claims Register*** means the official register of Claims maintained by the Clerk of the Bankruptcy Court and/or the Claims Agent in the Chapter 11 Case.

1.23    ***Class*** means a category of Claims or Interests established under Section 3.1 pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

1.24    ***Committee*** means the Official Committee of Asbestos Personal Injury Claimants appointed by the Office of the United States Trustee in the Chapter 11 Case.

1.25    ***Confirmation Date*** means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case.

1.26    ***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court to consider confirmation of the Plan under section 1129 of the Bankruptcy Code, as such hearing may be continued from time to time.

1.27    ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code and granting other related relief.

1.28    ***Cure*** means the payment of Cash by the Debtor, or the distribution of other property (as the parties may agree or the Bankruptcy Court may order), as necessary to: (a) cure a default by the Debtor under an Executory Contract or Unexpired Lease; and (b) permit the Debtor to assume such Executory Contract or Unexpired Lease under section 365 of the Bankruptcy Code.

1.29    ***Debtor*** means ON Marine Services Company LLC.

1.30    ***Delaware Trustee*** means the Entity appointed in accordance with Section 8.1(g) to serve as the "Delaware Trustee" in accordance with the terms of the Plan and the Liquidating Trust Agreement.

1.31    ***Derivative Liability Asbestos Claim*** means any Claim against a Protected Party or any current or former Representative or Shareholder of the Debtor based upon a legal or

equitable theory of liability in the nature of veil piercing, alter ego, successor liability, fraudulent transfer, or conspiracy, upon which a Protected Party or any current or former Representative or Shareholder of the Debtor is liable, or is allegedly liable, arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal injury, physical, emotional, or otherwise, to Persons, caused, or allegedly caused, directly or indirectly, by the presence of, or exposure to, asbestos, asbestos-containing products, or asbestos-containing materials, to the extent arising, directly or indirectly, from acts, omissions, business, or operations of the Debtor, including all related claims, debts, obligations, or liabilities for compensatory damages (such as loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages). For purposes of this definition, "veil piercing, alter ego, successor liability, fraudulent transfer, or conspiracy" claims shall include, without limitation, fraudulent transfer or fraudulent conveyance claims under applicable state or federal law, denuding the corporation claims, single business enterprise claims, claims that the Debtor was the predecessor, mere instrumentality, agent, or alter ego of such a Protected Party or any current or former Representative or Shareholder of the Debtor, trust fund claims, claims that such a Protected Party or any current or former Representative or Shareholder of the Debtor conspired with the Debtor, and any causes of action against a Protected Party or any current or former Representative or Shareholder of the Debtor that belong to the Debtor or the Estate, whether or not included in the foregoing list.

1.32    *Direct Action Asbestos Claim* means any Claim by any Person other than the Debtor directly against any Settling Asbestos Insurance Entity under any insurance policy that arises from the activities or products of the Debtor, or any insurance policy that is, or may in the future be, asserted to provide coverage for any of the aforementioned Claims, whether arising by contract, in tort, or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an insurer.

1.33    *Disallowed* means, with respect to any Non-Asbestos Claim or Interest, a Non-Asbestos Claim or Interest or any portion thereof that is not Allowed and (a) has been disallowed by a Final Order, (b) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Expense Claim has been timely filed or deemed timely filed with the Bankruptcy Court, (c) is not listed in the Schedules and as to which no Proof of Claim or request for payment of an Administrative Expense Claim has been timely filed or deemed timely filed with the Bankruptcy Court, (d) has been withdrawn by agreement of the Debtor and the holder thereof, or (e) has been withdrawn by the holder thereof.

1.34    *Disclosure Statement* means that certain disclosure statement pertaining to the Plan, including, without limitation, all exhibits and schedules thereto, as amended, modified, or supplemented from time to time.

1.35    *Disputed* means, with respect to any Non-Asbestos Claim or Interest, all or any portion of such Claim or Interest that is neither Allowed nor Disallowed.

1.36    *Distribution* means a payment under the Plan to holders of Allowed Non-Asbestos Claims or other eligible Entities on account of Allowed Non-Asbestos Claims.

1.37   ***Distribution Record Date*** means the record date for purposes of making Distributions under the Plan on account of Allowed Non-Asbestos Claims, which date shall be the date of the commencement of the Confirmation Hearing.

1.38   ***Effective Date*** means the first Business Day upon which each condition set forth in Section 11.2 has been satisfied or duly waived pursuant to Section 11.3.

1.39   ***Encumbrance*** means, with respect to any property (whether real or personal, or tangible or intangible), any mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such property (including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction) to secure payment of a debt or performance of an obligation.

1.40   ***Entity*** means any Person or organization created by law, including, without limitation, any individual, company, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof.

1.41   ***Estate*** means the estate of the Debtor created pursuant to section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

1.42   ***Excess Cash*** means all Cash held by the Debtor in excess of that necessary to satisfy all Allowed Non-Asbestos Claims and Post-Confirmation Expenses in accordance with the Plan.

1.43   ***Executory Contract or Unexpired Lease*** means any executory contract or unexpired lease of the Debtor that is subject to treatment under section 365 of the Bankruptcy Code.

1.44   ***Exculpated Parties*** means, collectively, (a) the Debtor, (b) members of the Committee, (c) each Settling Asbestos Insurance Entity, and (e) any Representative of the foregoing.

1.45   ***Final Decree*** means the decree contemplated under Bankruptcy Rule 3022 that closes this Chapter 11 Case.

1.46   ***Final Order*** means a judgment or an order, as the case may be, as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending; provided, however, that if an appeal, writ of certiorari, reargument, or rehearing thereof has been filed or sought:  (a)(i) such judgment or order shall have been affirmed by the highest court to which such judgment or order was appealed; or (ii) certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; or (b) such appeal, writ of certiorari, or request for reargument or rehearing shall have been dismissed with prejudice by the filing or seeking party.

1.47    **General Unsecured Claim** means a Claim against the Debtor that is not an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, or an Asbestos Claim.

1.48    **General Unsecured Recovery Pool** means Cash in the amount of $200,000.

1.49    **Impaired** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.50    **Indirect Asbestos Claim** means those cross-claims, contribution claims, subrogation claims, reimbursement claims, indemnity claims, and other similar derivative Claims, or allegations against the Debtor, a Protected Party, or any current or former Representative or Shareholder of the Debtor, whether or not any such Claim, debt, liability, or obligation is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, whether or not the facts of or legal bases therefore are known or unknown, and whether in the nature of or sounding in tort, or under contract, warranty, guarantee, contribution, joint and several liability, subrogation, reimbursement, or indemnity, or any other theory of law, equity, or admiralty for, arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or other personal or emotional injuries to Persons caused, or allegedly caused, directly or indirectly, by the presence of, or exposure to asbestos, asbestos-containing products, or asbestos-containing materials engineered, designed, marketed, manufactured, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, or in any way used by the Debtor or any Entity for whose products or operations the Debtor has liability or is alleged to have liability, but only to the extent arising, directly or indirectly, from acts, omissions, business, or operations of the Debtor (including the acts, omissions, business, or operations of any other Entity for whose products or operations the Debtor has liability, but only to the extent of the Debtor's liability for such acts, omissions, business, or operations), including claims, debts, obligations, or liabilities for compensatory damages (such as loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages).  Notwithstanding the foregoing, any such Claim, allegation, debt, liability, or obligation shall be an Indirect Asbestos Claim only to the extent of the Debtor's liability for that Claim, allegation, debt, liability, or obligation.

1.51    **Insurance Policy** means an insurance policy (including any comprehensive general liability policy, general liability policy, excess liability policy, umbrella liability policy, automobile policy, first-party property policy, wrap-up policy, site-specific policy, or project-specific policy, whether such policy is primary, umbrella, excess, or otherwise, whether known or unknown, whether domestic or foreign, and regardless of the policy territory covered, whether issued to the Debtor or otherwise) that was issued or allegedly issued to any Person prior to the Petition Date under which the Debtor is or allegedly may be insured or entitled to any rights or benefits.  The term "Insurance Policy" also includes any rights to indemnity, insurance, proceeds, or any rights of recovery for any Jones Act Claim under the rules of any agreement with any protection and indemnity club.  With respect to an Insurance Policy issued to Persons other than the Debtor under which the Debtor has, or claims to have, the right to insurance coverage, the term "Insurance Policy" means only that insurance coverage afforded by such

Insurance Policy to the Debtor.  The term "Insurance Policy" does not include workers compensation policies, if any.

1.52    *Insurance Policy Injunction* means the injunction pursuant to sections 105(a) and 363 of the Bankruptcy Code described more fully in Section 10.2.

1.53    *Insurance Settlement Agreements* means (i) the Settlement Agreement and Release, dated December 31, 2019, between the Debtor and Fireman's Fund Insurance Company and Fireman's Fund Insurance Company of Ohio, and (ii) the Settlement Agreement and Release, dated December 31, 2019, between the Debtor and Federal Insurance Company.

1.54    *Interest* means any right, title, and ownership interest in the Debtor, including, without limitation, all treasury stock.

1.55    *Internal Revenue Code* means title 26 of the United States Code, 26 U.S.C. § 1 *et seq*.

1.56    *Jones Act Claims* means asbestos-related claims arising under the Merchant Marine Act of 1920, 46 U.S.C. § 30104, in which claimants seek money damages for personal injury arising from claimants' exposure to asbestos aboard lake vessels owned and operated by the Debtor and/or its predecessor entities.

1.57    *Lien* means any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.58    *Liquidating Trust* means the liquidating trust that is to be established in accordance with the Plan, the Liquidating Trust Agreement, and the Confirmation Order, for the purpose of reviewing, resolving, and, if appropriate, paying Asbestos Claims, which trust shall be treated as a "qualified settlement fund" under section 468B of the Internal Revenue Code.

1.59    *Liquidating Trust Advisory Committee* means the advisory committee established pursuant to the terms of the Plan and the Liquidating Trust Agreement for the Liquidating Trust.

1.60    *Liquidating Trust Agreement* means the agreement, to be dated as of the Effective Date, by and among the Debtor, the Committee, the Liquidating Trustee, the Delaware Trustee, and the Liquidating Trust Advisory Committee, in substantially the form attached hereto as Exhibit A, as it may be modified from time to time.

1.61    *Liquidating Trust Assets* means, collectively, (a) the Asbestos Insurance Rights, and (b) any Excess Cash.

1.62    *Liquidating Trust Distribution Procedures* means the trust distribution procedures for the Liquidating Trust, in substantially the form attached hereto as Exhibit B, and such additional procedures as subsequently may be adopted by the Liquidating Trust pursuant to the terms of the Liquidating Trust Agreement, which shall provide for the resolution, liquidation, and satisfaction of Asbestos Claims.

1.63   *Liquidating Trust Documents* means, collectively:  (a) the Liquidating Trust Agreement; (b) the Liquidating Trust Distribution Procedures; and (c) any other agreements, instruments, and documents governing the establishment and administration of the Liquidating Trust, as the same may be amended or modified from time to time, in accordance with the terms thereof.

1.64   *Liquidating Trust Expense* means any of the liabilities, costs, or expenses incurred by the Liquidating Trust (other than liabilities to holders of Asbestos Claims) in carrying out the terms of the Liquidating Trust Agreement.

1.65   *Liquidating Trustee* means the Person appointed in accordance with Section 8.1(f) to serve as the trustee for the Liquidating Trust in accordance with the terms of the Plan and the Liquidating Trust Agreement.

1.66   *Non-Asbestos Claim* means any Claim against the Debtor that is not an Asbestos Claim.

1.67   *Non-Settling Asbestos Insurance Entity* means an Asbestos Insurance Entity that is not a Settling Asbestos Insurance Entity.

1.68   *ON Marine Asbestos Claim* means any Claim (except a Derivative Liability Asbestos Claim or an Indirect Asbestos Claim) or allegation or portion thereof against, or any debt, liability, or obligation of, the Debtor, a Protected Party, or any current or former Representative or Shareholder of the Debtor, whether now existing or hereafter arising, whether in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty for, arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or any other actual or alleged personal injury, physical, emotional or otherwise, to Persons, caused, or allegedly caused, directly or indirectly, by the presence of, or exposure to asbestos, asbestos-containing products, or asbestos-containing materials engineered, designed, marketed, manufactured, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, or in any other way used by the Debtor or any other Entity for whose products or operations the Debtor has liability or is alleged to have liability, including, but not limited to the presence of asbestos on any vessel owned or operated by the Debtor, but only to the extent arising, directly or indirectly, from acts, omissions, business, or operations of the Debtor (including the acts, omissions, business, or operations of any other Entity for whose products or operations the Debtor has liability, but only to the extent of the Debtor's liability for such acts, omissions, business, or operations), including all related claims, debts, obligations, or liabilities for compensatory damages (such as loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages).  Notwithstanding the foregoing, any such Claim, allegation, debt, liability, or obligation shall be a ON Marine Asbestos Claim only to the extent of the Debtor's liability for that Claim, allegation, debt, liability, or obligation.

1.69   *Person* means person as defined in section 101(41) of the Bankruptcy Code.

1.70   *Petition Date* means January 2, 2020.

1.71    ***Plan*** means this plan of reorganization under chapter 11 of the Bankruptcy Code, including the exhibits and schedules hereto, all as may be amended, supplemented, or modified from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the terms hereof.

1.72    ***Plan Documents*** means, collectively, (a) the Plan, (b) the Disclosure Statement, (c) the Liquidating Trust Documents, (d) the Plan Supplement, (e) all of the exhibits and schedules attached to any of the foregoing, and (g) any other document necessary to implement the Plan, as the same may be amended, modified, or supplemented.

1.73    ***Plan Supplement*** means the compilation of documents (or forms or summary of material terms thereof), schedules, and exhibits to the Plan (in each case, as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and the Bankruptcy Rules), if any, to be filed no later than five (5) calendar days before the Voting Deadline or such later date as the Bankruptcy Court may approve.

1.74    ***Post-Confirmation Expense*** means any fees, costs, and expenses, including, without limitation, United States Trustee fees, the Liquidating Trustee fees, attorneys' fees, other Professionals' fees, and any taxes imposed upon the Liquidating Trust or in respect of the Trust Assets necessary to complete the liquidation and winding up of the Debtor or its Estate or for the formation of the Liquidating Trust after the Confirmation Date.

1.75    ***Priority Non-Tax Claim*** means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

1.76    ***Priority Tax Claim*** means any Claim entitled to priority in payment as specified in section 507(a)(8) of the Bankruptcy Code.

1.77    ***Professional*** means a Person (a) employed in the Chapter 11 Case pursuant to sections 327, 328, 363, or 1103 of the Bankruptcy Code or otherwise, or (b) seeking or awarded compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

1.78    ***Proof of Claim*** means any proof of claim or interest filed with the Bankruptcy Court or the Claims Agent pursuant to section 501 of the Bankruptcy Code and Bankruptcy Rule 3001 or 3002 that asserts a Claim against or Interest in the Debtor.

1.79    ***Pro Rata*** means the proportion that the face amount of a Claim in a particular Class or Classes bears to the aggregate face amount of all Claims (including Disputed Claims, but excluding Disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

1.80    ***Protected Party*** means each of the Entities identified on Schedule 1 and each other Entity that, by virtue of its relationship to a Protected Party identified on Schedule 1, is required by the terms of an Approved Insurance Settlement Agreement to receive the benefit of the Insurance Policy Injunction.

1.81    ***Representative*** means, with respect to any specified Person, any current or former member, officer, director, employee, agent, Professional, attorney, accountant, financial advisor, expert, consultant, or other representative.

1.82    ***Schedules*** means the schedules of assets and liabilities filed by the Debtor, as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any supplements or amendments thereto through the Confirmation Date.

1.83    ***Secured Claim*** means a Claim against the Debtor that is secured by a valid, perfected, and enforceable Lien on, or security interest in, property of the Debtor, or that has the benefit of rights of setoff under section 553 of the Bankruptcy Code, but only to the extent of the value of the holder's interest in the Debtor's interest in such property, or to the extent of the amount subject to setoff, the value of which shall be determined as provided in section 506 of the Bankruptcy Code.

1.84    ***Settled Asbestos Insurance Policy*** means any Asbestos Insurance Policy that the Debtor has sold to a Settling Asbestos Insurance Entity under the terms of an Approved Insurance Settlement Agreement pursuant to section 363(f) of the Bankruptcy Code.

1.85    ***Settling Asbestos Insurance Entity*** means any Asbestos Insurance Entity that is a party to an Approved Insurance Settlement Agreement and any Person that receives a release under such an Approved Insurance Settlement Agreement.

1.86    ***Shareholder*** means an owner of an Interest.

1.87    ***Unimpaired*** means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

1.88    ***Voting Deadline*** means the deadline established by the Bankruptcy Court for holders of eligible Claims and Interests to vote to accept or reject the Plan.

1.89    ***Workers' Compensation Claim*** means any Claim (a) for benefits under a government-mandated workers' compensation system, which a past, present, or future employee of the Debtor or any of its predecessors is receiving, or may in the future have a right to receive; or (b) for reimbursement, contribution, subrogation, or indemnity brought by any Entity as a result of payments made to or for the benefit of such employees under such a system and the fees and expenses incurred under any insurance policies or laws or regulations covering such employee claims.

## B.    Rules of Interpretation

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained herein.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein:  (a) in the appropriate

context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; and (c) unless otherwise noted above, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

## SECTION 2
## UNCLASSIFIED CLAIMS

2.1    *Unclassified Claims*.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified for purposes of voting or receiving Distributions.  Rather, all such Claims are treated separately as unclassified Claims as set forth in this Section 2, and the holders thereof are not entitled to vote on the Plan.

2.2    *Administrative Expense Claims*.

(a)    <u>Filing Administrative Expense Claims</u>.  The holder of an Administrative Expense Claim, other than (a) a Claim covered by Section 2.3 hereof, (b) a liability incurred and payable in the ordinary course of business by the Debtor after the Petition Date, or (c) an Administrative Expense Claim that has been Allowed and/or paid in full on or before the Effective Date, must file and serve on the Debtor a request for payment of such Administrative Expense Claim pursuant to section 503(a) of the Bankruptcy Code so that it is received no later than the Administrative Expense Claim Bar Date.  Holders required to file and serve, who fail or file and serve, a request for payment of Administrative Expense Claims by the Administrative Expense Claim Bar Date shall be forever barred from asserting such Administrative Expense Claims against the Debtor and its property, and such Administrative Expense Claims shall be deemed waived and released as of the Effective Date.  Notwithstanding the foregoing, pursuant to section 503(b)(1)(D) of the Bankruptcy Code, no governmental unit shall be required to file a request for payment of any Administrative Expense Claim of a type described in sections 503(b)(1)(B) or 503(b)(1)(C) of the Bankruptcy Code as a condition to such Claim being Allowed.

(b)    <u>Allowance of Administrative Expense Claims</u>.  An Administrative Expense Claim, with respect to which a request for payment has been properly and timely filed pursuant to Section 2.2(a), shall become an Allowed Administrative Expense Claim if no objection to such request is filed with the Bankruptcy Court and served on the Debtor and the requesting party on or before the thirtieth (30th) calendar day after the Effective Date, as the same may be modified or extended from time to time by order of the Bankruptcy Court.  If an objection is timely filed, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent Allowed by a Final Order or as such Claim is settled, compromised, or otherwise resolved pursuant to Section 6.6.

(c)    Payment of Allowed Administrative Expense Claims.  Except to the extent that an Administrative Expense Claim already has been paid during the Chapter 11 Case or the holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, and except as provided in Section 2.3, each holder of an Allowed Administrative Expense Claim against the Debtor shall receive, in full and complete settlement, release, and discharge of such Claim, Cash equal to the unpaid amount of such Allowed Administrative Expense Claim on the latest of (i) the Effective Date or as soon thereafter as reasonably practicable; (ii) the first Business Day that is at least thirty (30) calendar days after the date on which such Administrative Expense Claim becomes Allowed; (iii) the date on which such Administrative Expense Claim becomes due and payable in the ordinary course of the Debtor's business in accordance with the terms and conditions of any agreements or understandings governing, or other documents relating to, such Allowed Administrative Expense Claim; and (iv) such other date as may be agreed to by such holder and the Debtor; provided, however, that Allowed Administrative Expense Claims (other than a Claim covered by Section 2.3) representing liabilities incurred in the ordinary course of business by the Debtor, as debtor-in-possession, or liabilities arising under loans or advances to or other obligations incurred by the Debtor, as debtor-in-possession, whether or not incurred in the ordinary course of business, may be paid by the Debtor, as applicable, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

2.3    *Professional Fees*.

(a)    Final Fee Applications.  Each Professional requesting compensation pursuant to section 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code for services rendered in connection with the Chapter 11 Case before the Effective Date shall (a) file with the Bankruptcy Court, and serve on the Debtor, an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Case on or before the date that is forty-five (45) calendar days after the Effective Date, and (b) after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and the Bankruptcy Rules and any prior orders of the Bankruptcy Court in the Chapter 11 Case, be paid by the Debtor, in Cash, in such amounts as are Allowed by the Bankruptcy Court (i) no later than thirty (30) calendar days after the date upon which the order relating to any such Allowed Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Claim and the Debtor, or, on or after the Effective Date, the Debtor.

(b)    Post-Effective Date Fees and Expenses.  From and after the Effective Date, the Debtor may, upon submission of appropriate documentation and in the ordinary course of business, pay the post-Effective Date charges incurred by the Debtor for any Professional's fees, disbursements, expenses, or related support services without application to or approval from the Bankruptcy Court.  On the Effective Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay any Professional for fees and charges incurred from and after the Effective Date in the ordinary course of business without any notice to or approval from the Bankruptcy Court.

2.4    *Priority Tax Claims*.

Except to the extent that the holder of an Allowed Priority Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and complete settlement, release, and discharge of such Claim, Cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim, on the latest of (i) the Effective Date, (ii) the date such Priority Tax Claim becomes an Allowed Claim, or as soon thereafter as is practicable, and (iii) the date such Allowed Priority Tax Claim becomes due and payable under applicable non-bankruptcy law.

## SECTION 3
## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1    *Summary of Classification*.

The following table designates the Classes of Claims against, and Interests in, the Debtor and specifies which of those Classes are (i) Impaired or Unimpaired by the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to accept or reject the Plan.  A Claim or portion thereof is classified in a particular Class only to the extent that such Claim or portion thereof qualifies within the description of such Class and is classified in a different Class to the extent that the portion of such Claim qualifies within the description of such different Class.

| Class | Designation | Treatment | Entitled to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Unimpaired | No (presumed to accept) |
| 2 | Secured Claims | Unimpaired | No (presumed to accept) |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Asbestos Claims | Impaired | Yes |
| 5 | Interests | Impaired | No (presumed to reject) |

3.2    *Special Provision Governing Unimpaired Claims*.

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtor in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

## SECTION 4
## TREATMENT OF CLAIMS AND INTERESTS

4.1    *Class 1—Priority Non-Tax Claims*.

(a)    <u>Classification</u>.  Class 1 consists of all Priority Non-Tax Claims.

(b)    <u>Treatment</u>.  Except to the extent that the holder of an Allowed Priority Non-Tax Claim agrees to a less favorable treatment, each holder of an Allowed Priority Non-Tax

Claim shall receive, in full and complete settlement, release, and discharge of, and in exchange for, such Claim, Cash in an amount equal to the Allowed amount of such Claim on the later of (i) the Effective Date and (ii) the date on which such Claim becomes Allowed, or, in each case, as soon as reasonably practicable thereafter.

(c)     <u>Impairment and Voting</u>.  Class 1 is Unimpaired.  Holders of Priority Non-Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, accordingly, are not entitled to vote to accept or reject the Plan.

4.2     ***Class 2—Secured Claims***.

(a)     <u>Classification</u>.  Class 2 consists of all Secured Claims.

(b)     <u>Treatment</u>.  Except to the extent that the holder of an Allowed Secured Claim agrees to a less favorable treatment, on the Effective Date or as soon thereafter as practicable, each holder of an Allowed Secured Claim shall receive, at the option of the Debtor, and in full and complete settlement, release, and discharge of, and in exchange for, such Claim (i) payment in full in Cash, (ii) the collateral securing such Allowed Secured Claim, or (iii) other treatment rendering such Claim Unimpaired.

(c)     <u>Impairment and Voting</u>.  Class 2 is Unimpaired.  Holders of Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, accordingly, are not entitled to vote to accept or reject the Plan.

4.3     ***Class 3—General Unsecured Claims***.

(a)     <u>Classification</u>.  Class 3 consists of all General Unsecured Claims.

(b)     <u>Treatment</u>.  Except to the extent previously paid during the Chapter 11 Case or the holder of an Allowed General Unsecured Claim agrees to a less favorable treatment, each holder of an Allowed General Unsecured Claim shall receive, in full and complete settlement, release, and discharge of, and in exchange for, such Claim, Cash in an amount equal to its Pro Rata share of the General Unsecured Recovery Pool subject to a maximum Distribution to each holder of an Allowed General Unsecured Claim of 100% of the Allowed amount of such Claim.  Distributions shall be made to holders of Allowed General Unsecured Claims from the General Unsecured Recovery Pool (i) on the Effective Date or as soon as reasonably practicable thereafter and (ii) on or before the date that is thirty (30) days after all Disputed General Unsecured Claims are Allowed or Disallowed.  Solely for purposes of calculating Distributions to holders of Allowed General Unsecured Claims on the Effective Date, all Disputed General Unsecured Claims will be treated as though they are Allowed in the amounts asserted or as estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, and a reserve will be set aside for such Disputed General Unsecured Claims.

(c)     <u>Impairment and Voting</u>.  Class 3 is Impaired.  Each holder of a General Unsecured Claim shall be entitled to vote to accept or reject the Plan.  Whether the requisite votes in favor of the Plan from holders of General Unsecured Claims have been attained shall be determined in accordance with section 1126 of the Bankruptcy Code.

4.4     *Class 4—Asbestos Claims*.

(a)     <u>Classification</u>.  Class 4 consists of all Asbestos Claims.

(b)     <u>Treatment</u>.  On the Effective Date, all liability for Asbestos Claims shall automatically, and without further act, deed, or court order, be assumed by and transferred to the Liquidating Trust in accordance with, and to the extent set forth in Sections 8.1(d) and 10.2, the Plan Documents, and the Confirmation Order.  Each Asbestos Claim shall be resolved in accordance with the terms, provisions, and procedures set forth in the Liquidating Trust Documents.  The Liquidating Trust shall be funded in accordance with Section 8.1(b).  The sole recourse of the holder of an Asbestos Claim on account of such Asbestos Claim shall be to the Liquidating Trust.

(c)     <u>Impairment and Voting</u>.  Class 4 is Impaired.  Each holder of an Asbestos Claim shall be entitled to vote to accept or reject the Plan.  Whether the requisite votes in favor of the Plan from holders of Asbestos Claims have been attained shall be determined in accordance with section 1126 of the Bankruptcy Code.

4.5     *Class 5—Interests in the Debtor*.

(a)     <u>Classification</u>.  Class 5 consists of all Interests.

(b)     <u>Treatment</u>.  All Interests will remain outstanding and will be cancelled when the existence of the Debtor is cancelled in accordance with Section 8.5.  Upon such cancellation, no property will be distributed to, or retained by, holders of such Interests.

(c)     <u>Impairment and Voting</u>.  Class 5 is Impaired.  Holders of Interests are conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code and, accordingly, are not entitled to vote to accept or reject the Plan.

## SECTION 5
## DISTRIBUTIONS TO HOLDERS OF ALLOWED NON-ASBESTOS CLAIMS

5.1     *Distributions*.

Other than distributions to be made to holders of Asbestos Claims from the Liquidating Trust, the Debtor shall make all Distributions required to be made under the Plan as provided under this Section 5.  All distributions to be made on account of Asbestos Claims shall be made in accordance with the terms of the Liquidating Trust Documents.

5.2     *Distribution Record Date*.

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Non-Asbestos Claims that are transferred pursuant to Bankruptcy Rule 3001 prior to the Distribution Record Date shall be treated as the holders of such Non-Asbestos Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.  The Debtor shall have no

obligation to recognize any transfer of any Non-Asbestos Claim occurring on or after the Distribution Record Date.

5.3     *Date of Distributions*.

Except as otherwise provided herein, any and all Distributions and deliveries to be made hereunder on account of Allowed Non-Asbestos Claims or Interests shall be made on the Effective Date, as soon thereafter as is practicable, or as otherwise determined in accordance with the Plan.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

5.4     *Delivery of Distributions*.

Subject to Bankruptcy Rule 9010, all Distributions to any holder of an Allowed Non-Asbestos Claim shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents, unless the Debtor has been notified in writing of a change of address.  In the event that any Distribution to any holder is returned as undeliverable, then no further Distributions to such holder shall be made unless and until the Debtor is notified of such holder's then-current address, at which time all missed Distributions shall be made to such holder without interest; provided, however, that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code on the date that is six (6) months after the Effective Date.  After such date, all unclaimed property or interest in property shall be transferred and delivered to the Liquidating Trust, and the Non-Asbestos Claim of any other holder to such property or interest in property shall be forever barred notwithstanding any applicable federal or state escheat or abandoned or unclaimed property laws to the contrary.  Nothing in the Plan shall require the Debtor to attempt to locate any holder of an Allowed Non-Asbestos Claim.

5.5     *Manner of Payment Under Plan*.

At the option of the Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in any applicable agreement.

5.6     *Withholding of Taxes*.

In connection with this Plan, the Debtor shall comply with all applicable withholding and reporting requirements imposed by federal, state, local, and foreign taxing authorities, and all Distributions hereunder shall be subject to those withholding and reporting requirements. Holders of Allowed Non-Asbestos Claims may be required to provide certain tax information as a condition to receiving Distributions pursuant to this Plan.  Notwithstanding any other provision of this Plan, each Person receiving a Distribution will have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any domestic, foreign, provincial, federal, state, or municipal government, government agency, commission, department, bureau, or other governmental entity, including income and other tax obligations, on account of that Distribution.

5.7    ***Time Bar to Cash Payments***.

Checks issued by the Debtor in respect of Distributions on Allowed Non-Asbestos Claims shall be null and void if not presented for payment within sixty (60) calendar days after the date of issuance thereof.  Requests for reissuance of any check shall be made in writing to the Debtor by the holder of the Allowed Non-Asbestos Claim to whom such check originally was issued on or before thirty (30) calendar days after the expiration of the sixty (60) calendar day period following the date of issuance of such check.  After expiration of the thirty (30) calendar day period, all funds held on account of such void check shall, in the discretion of the Debtor, be used to satisfy the costs of administering and fully consummating the Plan or become property of and shall be transferred and delivered to the Liquidating Trust, and the Non-Asbestos Claim of any holder to such Distributions shall be forever barred.

5.8    ***Fractional Cents***.

Notwithstanding any other provision in the Plan to the contrary, no payment of fractional cents will be made pursuant to the Plan.  Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made will reflect a rounding of such fraction to the nearest whole penny (up or down), with fractions of more than half a penny being rounded up and fractions of half a penny or less being rounded down.

5.9    ***No Postpetition Interest on Non-Asbestos Claims***.

Unless expressly provided for in the Plan, the Plan Documents, and the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan, or unless required by applicable bankruptcy law (including the fair and equitable rule), interest and late fees shall not accrue on or after the Petition Date on account of any Non-Asbestos Claim.

5.10    ***Setoffs***.

The Debtor, pursuant to the Bankruptcy Code (including section 553 of the Bankruptcy Code), applicable non-bankruptcy law, or as may be agreed to by the holder of a Non-Asbestos Claim, may, but shall not be required to, set off against any Non-Asbestos Claim (for purposes of determining the Allowed amount of such Non-Asbestos Claim on which Distribution shall be made), any claims of any nature whatsoever that the Debtor may have against the holder of such Non-Asbestos Claim to the extent not otherwise compromised or settled on or prior to the Effective Date; provided, however, that neither the failure to do so nor the allowance of any Non-Asbestos Claim hereunder shall constitute a waiver or release by the Debtor of any such Non-Asbestos Claim the Debtor may have against the holder of such Non-Asbestos Claim.

## SECTION 6
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

6.1     *Asbestos Claims*.

All Asbestos Claims shall be submitted to and resolved by the Liquidating Trust pursuant to the Liquidating Trust Documents.  Only the Liquidating Trust shall have the right to object to and/or resolve disputed Asbestos Claims.

6.2     *Objections to Non-Asbestos Claims*.

The Debtor shall be entitled to object to Non-Asbestos Claims.  Any objections to Non-Asbestos Claims shall be filed and served on or before (a) the sixtieth (60th) calendar day following the later of (i) the Effective Date and (ii) the date that a Proof of Claim is filed or amended or a Non-Asbestos Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Non-Asbestos Claim, or (b) such later date as may be fixed by the Bankruptcy Court.

6.3     *Estimation of Non-Asbestos Claims*.

The Debtor may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Non-Asbestos Claim pursuant to section 502(c) of the Bankruptcy Code (so long as the Bankruptcy Court has not already overruled an objection to such Disputed Non-Asbestos Claim filed by the Debtor), and the Bankruptcy Court will retain jurisdiction to estimate any Non-Asbestos Claim at any time, including, without limitation, during the pendency of litigation concerning any objection to any Non-Asbestos Claim or of any appeal relating thereto.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Non-Asbestos Claim, the amount so estimated shall constitute either the Allowed amount of such Non-Asbestos Claim or a maximum limitation on the amount of such Non-Asbestos Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Non-Asbestos Claim, the Debtor may pursue supplementary proceedings to object to the allowance of such Non-Asbestos Claim.  Non-Asbestos Claims may be estimated and subsequently compromised, settled, withdrawn, or otherwise resolved by any mechanism approved by the Bankruptcy Court.  All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.

6.4     *No Distributions Pending Allowance*.

Notwithstanding any other provision hereof, if a Non-Asbestos Claim or any portion of a Non-Asbestos Claim is Disputed, no payment or Distribution shall be made on account of the Disputed portion of such Non-Asbestos Claim unless and until such Claim becomes an Allowed Claim.

6.5     *Distributions After Allowance*.

To the extent that a Disputed Non-Asbestos Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the holder of such Allowed Non-Asbestos Claim in

accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Non-Asbestos Claim becomes a Final Order, the Debtor shall provide to the holder of such Non-Asbestos Claim the Distribution (if any) to which such holder is entitled under the Plan as of the Effective Date, without any interest to be paid on account of such Non-Asbestos Claim unless required under applicable bankruptcy law.

6.6     *Settlement of Disputed Non-Asbestos Claims*.

Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Debtor shall have the exclusive authority to settle or compromise any Disputed Non-Asbestos Claim by written agreement with the holder of such Claim without any further notice to or action, order, or approval by the Bankruptcy Court, and the Claims Agent, upon direction of the Debtor, shall administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval of the Bankruptcy Court.

6.7     *Adjustment to Claims Register Without Objection*.

Any duplicate Claim or Interest, any Claim or Interest that has been paid or satisfied, or any Claim that has been amended and superseded, may be adjusted or expunged on the Claims Register by the Claims Agent, upon the direction of the Debtor, without a Claim objection having to be filed and without any further notice to or action, order, or approval from the Bankruptcy Court.  In addition, on and after the Effective Date, any Asbestos Claim for which a Proof of Claim was filed with the Bankruptcy Court or the Claims Agent may be removed from the Claims Register by the Claims Agent, upon the direction of the Debtor, on the basis that it has been assumed by the Liquidating Trust in accordance with this Plan and the Confirmation Order, without any further notice to parties in interest or further action, order, or approval by or from the Bankruptcy Court.

### SECTION 7
### TREATMENT OF EXECUTORY CONTRACTS
### AND UNEXPIRED LEASES

7.1     *General Treatment*.

Effective as of the Effective Date, all Executory Contracts and Unexpired Leases to which the Debtor is a party are hereby rejected, except for any Executory Contract or Unexpired Lease that (a) has previously been assumed or rejected pursuant to a Final Order of the Bankruptcy Court, or (b) is the subject of a separate assumption or rejection motion filed by the Debtor under section 365 of the Bankruptcy Code before the Confirmation Date.  The Confirmation Order shall constitute the Bankruptcy Court's approval of the rejection of the contracts and leases rejected hereby.

7.2     *Rejection Claims*.

In the event that the rejection of an Executory Contract or Unexpired Lease by the Debtor pursuant to the Plan results in damages to the other party or parties to such Executory Contract or

Unexpired Lease, a Claim for damages, if not heretofore evidenced by a timely Proof of Claim, shall be forever barred and shall not be enforceable against the Debtor, or its properties or interests in property, unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for the Debtor no later than thirty (30) calendar days after the date of entry of an order by the Bankruptcy Court approving such rejection.

 7.3 *Reservation of Rights*.

  Neither the exclusion nor inclusion of any contract or lease by the Debtor on any exhibit, schedule, or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, will constitute an admission by the Debtor that any such contract or lease is or is not in fact an Executory Contract or Unexpired Lease or that the Debtor have any liability thereunder.Nothing in the Plan will waive, excuse, limit, diminish, or otherwise alter any of the defenses, Claims, Causes of Action, or other rights of the Debtor under any executory or non-executory contract or any unexpired or expired lease.Nothing in the Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtor under any executory or non-executory contract or any unexpired or expired lease.

**SECTION 8**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

 8.1 *The Liquidating Trust*.

  (a) Creation of the Liquidating Trust.  On the Effective Date, the Liquidating Trust shall be created in accordance with the Plan Documents.  The Liquidating Trust is intended to constitute a "qualified settlement fund" within the meaning of section 468B of the Internal Revenue Code and the regulations issued thereunder.  The purpose of the Liquidating Trust shall be to assume, liquidate, and resolve Asbestos Claims and to use the Liquidating Trust Assets to pay holders of Asbestos Claims in accordance with the terms of the Liquidating Trust Documents, the Plan, and the Confirmation Order.

  (b) Transfer of Liquidating Trust Assets.  Effective on the Effective Date, by virtue of confirmation of the Plan, any and all Liquidating Trust Assets shall be transferred to and be vested in the Liquidating Trust, without further notice, deed, or order; provided, however, that any Excess Cash shall not be transferred to the Liquidating Trust until after satisfaction of all liabilities for which the Excess Cash was intended to satisfy; and, provided, further, that to the extent that certain Liquidating Trust Assets, because of their nature or because they will accrue subsequent to the Effective Date, cannot be transferred to and vested in the Liquidating Trust on the Effective Date, such Liquidating Trust Assets shall be transferred to and be vested in the Liquidating Trust as soon as practicable after the Effective Date.

  (c) Vesting of Liquidating Trust Assets.  Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, all right, title, and interest in and to such Liquidating Trust Assets, and any proceeds thereof, shall be indefeasibly and irrevocably vested in the Liquidating Trust, free and clear of all Claims, Interests, Encumbrances, and other interests of any Entity, without any further action of the Bankruptcy Court or any Entity, subject to other provisions of this Plan.

(d) <u>Transfer of Asbestos Claims to the Liquidating Trust</u>. On the Effective Date, all Asbestos Claims shall be assumed by and transferred to the Liquidating Trust and shall be satisfied solely by the Liquidating Trust Assets. The Liquidating Trust shall have no liability for any Claims other than Asbestos Claims, and no Claims other than Asbestos Claims shall be transferred to the Liquidating Trust.

(e) <u>Liquidating Trust Expenses</u>. The Liquidating Trust shall pay all Liquidating Trust Expenses, other than Post-Confirmation Expenses, from the Liquidating Trust Assets.

(f) <u>Appointment of Liquidating Trustee</u>. The individual who will serve as the initial Liquidating Trustee shall be selected by the Committee, identified in the Plan Supplement, and appointed pursuant to the Confirmation Order. All subsequent Liquidating Trustees shall be appointed in accordance with the terms of the Liquidating Trust Agreement.

(g) <u>Appointment of Delaware Trustee</u>. The Entity that will serve as the initial Delaware Trustee shall be selected by the Committee, will be identified in the Plan Supplement, and appointed pursuant to the Confirmation Order. All subsequent Delaware Trustees shall be appointed in accordance with the terms of the Liquidating Trust Agreement.

(h) <u>Appointment of Liquidating Trust Advisory Committee Members</u>. The initial members of the Liquidating Trust Advisory Committee shall be selected by the Committee, identified in the Plan Supplement, and appointed pursuant to the Confirmation Order. All subsequent Liquidating Trust Advisory Committee members shall be appointed in accordance with the terms of the Liquidating Trust Agreement.

(i) <u>Indemnification</u>. The Liquidating Trust shall, pursuant to the terms of the Liquidating Trust Agreement, indemnify the Protected Parties for any liability or alleged liability arising out of, or resulting from, or attributable to, an Asbestos Claim, including fines and penalties resulting from the Liquidating Trust's failure to comply with Section 8.2(j). Indemnification claims arising under this Section 8.2(i) will not be subject to the Liquidating Trust Distribution Procedures.

(j) <u>Liquidating Trust Compliance with Documentation Requirements</u>.

The Liquidating Trust Distribution Procedures shall specifically provide for a form of release ("<u>Claimant Release,</u>" attached as Schedule 1 to the Liquidating Trust Distribution Procedures, to be executed in favor of Settling Asbestos Insurance Entities, by each holder of an Asbestos Claim as a condition of, and prior to, payment to such holder. As a condition to making any payment to a holder of an Asbestos Claim, the Liquidating Trust shall obtain a release of all such holder's Claims against (i) the Debtor, (ii) the Liquidating Trust, and (iii) each Protected Party, that relate in any way to the Debtor or the Asbestos Insurance Policies addressed under the Approved Insurance Settlement Agreements, as well as certification of compliance with certain Medicare/Medicaid obligations. The Liquidating Trust will promptly provide copies of the executed Claimant Releases to a Settling Asbestos Insurance Entity upon request by the Settling Asbestos Insurance Entity, and the requesting Settling Asbestos Insurance Entity shall keep the Claimant Releases and all information contained therein confidential and use such

information for no purpose other than meeting obligations under MMSEA (as defined below) or
to defend against a released Claim and to assert rights set forth in the Claimant Release.

With respect to any payment made for an Asbestos Claim, the Liquidating Trust
Agreement shall provide that the Liquidating Trust will perform any actions and make any
filings that may be required by the Debtor for timely compliance with all requirements of the
Medicare Secondary Payer Act, 42 U.S.C. § 1395y *et seq*., or any other similar statute or
regulation, any related rules, regulations, or guidance issued in connection therewith or
amendments thereto ("MSP"), including Section 111 of the Medicare, Medicaid, and SCHIP
Extension Act of 2007 (P.L. 110-173), or another similar statute or regulation and any related
rules, regulations, or guidance issued or amendments or amendatory statutes passed in
connection therewith ("MMSEA").  Such performance by the Liquidating Trust shall continue
regardless of dissolution or other termination of the existence of the Debtor.

The Liquidating Trust's obligations to each Settling Asbestos Insurance Entity
with respect to the statutes referenced in the foregoing paragraph, including as to reporting,
indemnity, provision of documents and information, and certification by holders of Asbestos
Claims as to payment resolution of obligations under such statutes, will be set forth in the
Liquidating Trust Agreement and the Liquidating Trust Distribution Procedures.

The Liquidating Trust Agreement may provide for retention of a qualified third-
party service provider to perform any actions required for timely compliance with MSP and/or
MMSEA.

(k)    Institution and Maintenance of Legal and Other Proceedings.As of the
Effective Date, the Liquidating Trust shall be empowered to initiate, prosecute, defend, settle,
and resolve all legal actions and other proceedings related to any asset (including the Liquidating
Trust Assets), liability, or responsibility of the Liquidating Trust.  The Liquidating Trust shall be
responsible for payment of all damages, awards, judgments, settlements, expenses, costs, fees,
and other charges incurred subsequent to the Effective Date arising from or associated with any
legal action or other proceeding that is the subject of this Section 8.1(k).  To facilitate the powers
granted to the Liquidating Trust herein, the Liquidating Trust may initiate legal actions in the
name of "ON Marine Services Company LLC."  Notwithstanding anything to the contrary in this
Section 8.1(k), nothing in this Section creates, modifies, or eliminates any right, duty, or
obligation addressed, resolved, or released pursuant to this Plan.

(l)    Excess Liquidating Trust Assets.  After the payment in full of all Allowed
Asbestos Claims and Liquidating Trust Expenses, any monies remaining in the Liquidating Trust
shall be transferred to one or more charities qualified under section 501(c)(3) of the Internal
Revenue Code, which are to be determined by the Liquidating Trustee using his or her
reasonable discretion; provided, however, that if practicable, the tax-exempt organization(s) shall
be related to the treatment of, research on, or the relief of suffering of individuals with asbestos-
related disorders.

8.2    ***Sources of Consideration for Distributions***.

The Debtor shall fund Distributions with Cash on hand.

8.3    *Amended Articles of Incorporation*.

The articles of incorporation of the Debtor shall be amended and restated as of the Effective Date in substantially the form attached to the Plan Supplement to, among other things, (a) prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code and (b) otherwise effectuate the provisions of the Plan, subject to further amendment of such amended and restated articles of incorporation after the Effective Date as permitted by applicable law.

8.4    *Corporate Action*.

On the Effective Date, all actions contemplated by the Plan or that are necessary to implement the provisions of the Plan shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects without the need for any further corporate action, including, to the extent applicable, (a) the creation of the Liquidating Trust, (b) the rejection of Executory Contracts and Unexpired Leases, (c) the cancellation of the Debtor's corporate existence, and (d) all other acts or actions contemplated or reasonably necessary or appropriate to consummate the Plan (whether to occur before, on, or after the Effective Date).

8.5    *Cancellation of Corporate Existence*.

As soon as reasonably practicable following the Effective Date, the satisfaction of all Allowed Non-Asbestos Claims, and the transfer of all Liquidating Trust Assets to the Liquidating Trust, in each case pursuant to the terms of the Plan, the Debtor shall dissolve and file any and all documents and take any and all other actions that may be necessary and appropriate to cancel the Debtor's corporate existence.

8.6    *Authority of Liquidating Trust to Petition for Final Decree*.

If the Debtor's corporate existence is cancelled prior to filing a motion for the Final Decree, the Liquidating Trust shall have authority to petition for the Final Decree and to take all actions that are necessary and appropriate to secure entry of the Final Decree and close this Chapter 11 Case.

## SECTION 9
## EFFECT OF CONFIRMATION

9.1    *Vesting of Assets*.

On the Effective Date, pursuant to sections 1141(b) of the Bankruptcy Code, all property of the Estate (except the Liquidating Trust Assets, which are being transferred to the Liquidating Trust and shall vest therein) shall vest in the Debtor, except as provided in the Plan, the Plan Documents, or the Confirmation Order.

9.2     *Binding Effect*.

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtor, and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

9.3     *Retention of Causes of Action/Reservation of Rights*.

Except as otherwise provided in the Plan, pursuant to section 1123(b) of the Bankruptcy Code, the Debtor shall retain and may enforce, sue on, settle, compromise, otherwise resolve, discontinue, abandon, or dismiss, or decline to do any of the foregoing with regard to, any and all Claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, accruing to or that are property of the Debtor or its Estate against any Entity without the approval of the Bankruptcy Court, including (i) any and all Claims against any Entity, to the extent such Entity asserts a cross-claim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtor or its Representatives; (ii) all defenses and counterclaims to all Claims asserted against the Debtor or the Estate, including, without limitation, setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code; and (iii) turnover of any property of the Estate.  The Debtor or its successor(s) may pursue such retained Claims, rights, Causes of Action, suits, and proceedings, as appropriate, in accordance with the best interests of the Debtor or its successor(s) that hold such rights.

9.4     *Dissolution of the Committee*.

On the Effective Date, the Committee shall be dissolved automatically, whereupon its members, Professionals, and agents shall be released and discharged of and from any further duties and responsibilities in the Chapter 11 Case and under the Bankruptcy Code, except that the Committee may continue to appear and be heard as a party in interest with respect to applications for compensation or expense reimbursements of Professionals, any motions or other actions seeking enforcement or implementation of the provisions of the Plan or the Confirmation Order, or pending appeals of any other order entered in the Chapter 11 Case.

In addition, effective as of the Effective Date, the Liquidating Trust Advisory Committee shall succeed to, and exclusively hold, the attorney-client privilege and other privileges held by the Committee and shall enjoy the work product protections that were applicable or available to the Committee before its dissolution.

**SECTION 10**
**EXCULPATIONS, INJUNCTIONS, AND RELEASES**

10.1     *Exculpation.*

***None of the Exculpated Parties shall have or incur any liability to any holder of a Claim against the Debtor (including any Asbestos Claim), or to any current or former holder of an Interest, for any act or omission occurring on or after the Petition Date that is based on, arises from, or is attributable to (a) the Chapter 11 Case, (b) the Plan, (c) the negotiation, formulation, or preparation of the Plan, (d) any of the terms of or the settlements or***

- 25 -

*compromises reflected in the Plan Documents or approved as part of this Chapter 11 Case, including, but not limited to, the Approved Insurance Settlement Agreements, (e) the pursuit of confirmation of the Plan, or (f) consummation of the Plan or administration of the Plan or the property to be distributed under the Plan or the Liquidating Trust Distribution Procedures, so long as, in each case, such act or omission did not constitute willful misconduct or gross negligence as determined by a Final Order.  In all respects, the Exculpated Parties shall be entitled to rely on the advice of counsel and financial and other experts or professionals employed by them with respect to their duties and responsibilities in the Chapter 11 Case, and such reliance shall conclusively establish the absence of willful misconduct and gross negligence.  In addition, any act or omission taken with the approval of the Bankruptcy Court shall be conclusively deemed not to constitute willful misconduct or gross negligence.*

10.2    ***Insurance Policy Injunction****.*

*In accordance with sections 105(a) and 363(f) of the Bankruptcy Code, and to give further effect to the Approved Insurance Settlement Agreements, the Confirmation Order shall provide the following Insurance Policy Injunction to take effect on the occurrence of the Effective Date:  all Persons who hold or assert, or may in the future hold or assert, any Claim against the Debtor arising out of or in connection with the activities covered by the Settled Asbestos Insurance Policies, or in connection with the Debtor's activities giving rise to Claims made or to be made under the Settled Asbestos Insurance Policies, or any other Person who may claim to be an insured, additional insured, or otherwise entitled to any benefit under the Settled Asbestos Insurance Policies, shall be and hereby are permanently stayed, restrained, and enjoined from asserting any claim or right to entitlement, or taking any other action against the Protected Parties, for the purpose of obtaining any recovery or other relief from the Protected Parties or under or in connection with the Settled Asbestos Insurance Policies.*

10.3    ***Release of Directors, Officers, and Shareholders****.*

The acceptance of any Distribution by a holder of a Claim, and, with respect to Asbestos Claims, the acceptance of payment from the Liquidating Trust by a holder of an Asbestos Claim, shall constitute a waiver and release of any and all causes of action that such holder did commence or could have commenced against any current or former officer, director, or Shareholder of the Debtor, that is based upon, is attributable to, or arises from any acts or omissions of such officer, director, or Shareholder (while serving in such capacity) that occurred prior to the Effective Date, to the fullest extent permitted under applicable law (as now in effect or subsequently extended), except for willful misconduct or gross negligence as determined by a Final Order.

10.4    ***Release of Avoidance Actions****.*

Effective on the occurrence of the Effective Date, the Debtor hereby fully, finally, and forever releases, relinquishes, and discharges each and every Avoidance Action and other Claim and Cause of action that it holds against any other Entity solely as a result of its status as a debtor-in-possession; provided, however, that nothing herein shall be deemed to release rights against an Asbestos Insurance Company, the Asbestos Insurance Rights, or rights against third parties that have arisen in the ordinary course of business.

10.5    *Terms of Injunction and Automatic Stay*.

All of the injunctions and/or stays arising under or entered during the Chapter 11 Case under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Insurance Policy Injunction set forth in Section 10.2 becomes effective, and shall continue to remain in full force and effect thereafter as and to the extent provided by the Plan, the Confirmation Order, or by their own terms.  The Insurance Policy Injunction shall become effective on the Effective Date and shall continue in effect at all times thereafter unless otherwise provided by the Plan or the Confirmation Order.  All actions of the type or nature of those to be enjoined by the Insurance Policy Injunction shall be enjoined during the period between the Confirmation Date and the Effective Date.  Additionally, on and after the Confirmation Date, the Debtor may seek such further orders as it may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

10.6    *No Discharge*.

For the avoidance of doubt, the Plan does not result in the Debtor receiving a discharge pursuant to section 1141(d)(3) of the Bankruptcy Code.

## SECTION 11
## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

11.1    *Conditions to the Confirmation Date*.

The Confirmation Date shall not occur unless and until each of the following conditions has been satisfied or duly waived pursuant to Section 11.3:

(a)    at least two-thirds (2/3) in amount and fifty percent (50%) in number of the holders of General Unsecured Claims or the holders of Asbestos Claims actually voting on the Plan have voted to accept the Plan, and, with respect to any non-accepting Class, the Court has determined that the requirements of section 1129(b)(1) of the Bankruptcy Code have been satisfied with respect to such Class;

(b)    the Confirmation Order has been entered by the Bankruptcy Court and shall be acceptable in form and substance to the Debtor;

(c)    the Confirmation Order shall contain the following findings of fact and conclusions of law, among others:

1.    the Plan complies with all applicable provisions of the Bankruptcy Code, including, without limitation, those requiring that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud;

2.    the Plan separately classifies General Unsecured Claims in Class 3 and Asbestos Claims in Class 4, and at least two-thirds (2/3) in amount and fifty

percent (50%) of the members in at least one of such Classes that voted on the Plan have voted to accept the Plan;

     3.    the Liquidating Trust to be established pursuant to the Plan is a valid legal Entity separate and distinct from the Debtor, and each of the Debtor and the Liquidating Trust are not and may not in the future be held liable for any liability of the other entities based upon any legal or equitable theory, including those consisting of or relating to veil piercing, alter ego, successor liability, fraudulent transfer, or conspiracy, including but not limited to fraudulent transfer or fraudulent conveyance claims under applicable state or federal law;

     4.    the Liquidating Trust is to be funded by the Liquidating Trust Assets;

     5.    the assignment by the Debtor to the Liquidating Trust of the Asbestos Insurance Rights is valid and binding in accordance with the provisions of section 1123(a)(5) of the Bankruptcy Code;

     6.    the Liquidating Trust will have the sole and exclusive authority as of the Effective Date to resolve all Asbestos Claims;

     7.    the Liquidating Trust is to use its assets and income to pay Asbestos Claims that are eligible for payment under the Liquidating Trust Distribution Procedures and Liquidating Trust Expenses;

     8.    the terms of the Insurance Policy Injunction, including any provisions barring actions against third parties, are set forth in the Plan and the Disclosure Statement;

     9.    the Insurance Policy Injunction is essential to the Plan;

     10.    the Insurance Policy Injunction is to be implemented in accordance with the Plan;

     11.    in light of the benefits provided, or to be provided, to the Liquidating Trust by or on behalf of each Protected Party, the Insurance Policy Injunction is fair and equitable to all creditors and holders of Asbestos Claims;

     12.    the rights, duties, obligations, and liabilities of any Non-Settling Insurance Company under an Asbestos Insurance Policy are not enlarged, diminished, reduced, or eliminated by any aspect of this Chapter 11 Case, except as may be limited by the Insurance Policy Injunction, the Confirmation Order, and any Final Order approving an Insurance Settlement Agreement;

     13.    each Protected Party is entitled to the protection of the Insurance Policy Injunction;

- 28 -

14.     the exculpation provided in Section 10.1, and the release provided in Section 10.3, are in each case essential to the settlement of Asbestos Claims as reflected in the Plan; and

15.     the Plan and its acceptance otherwise comply with section 1126 of the Bankruptcy Code, and confirmation of the Plan is in the best interests of all creditors.

(d)     The Confirmation Order shall, among other things:

1.     provide for the Insurance Policy Injunction;

2.     provide that the Liquidating Trust Assets shall be contributed or transferred to the Liquidating Trust;

3.     provide that all transfers of assets of the Debtor contemplated under the Plan shall be free and clear of all Claims and Encumbrances against or on such assets;

4.     authorize the implementation of the Plan in accordance with its terms and provide that, on the Effective Date, all of the transactions listed in Section 8.1 shall occur as set forth therein;

5.     provide that any transfers effected or entered into, or to be effected or entered into, under the Plan shall be and are exempt under section 1146(a) of the Bankruptcy Code from any state, city or other municipality transfer taxes, mortgage recording taxes, and any other stamp or similar tax;

6.     approve in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan, including, without limitation, the Liquidating Trust Agreement, the Liquidating Trust Distribution Procedures, and the other Liquidating Trust Documents;

7.     provide that all Executory Contracts and Unexpired Leases not previously assumed or subject to a pending motion to assume have been rejected pursuant to section 365 of the Bankruptcy Code;

8.     ratify all releases provided in each Approved Insurance Settlement Agreement;

9.     incorporate by reference all previously issued orders approving an Insurance Settlement Agreement and provide that nothing in the Plan or the Confirmation Order is intended to modify or limit such orders;

10.     provide that the Debtor is authorized and directed to file any and all documents, and to take any other actions that may be necessary and appropriate to cancel its corporate existence within thirty (30) days after it has paid or otherwise satisfied all Non-Asbestos Claims and completed its transfer of

all Liquidating Trust Assets to the Litigating Trust, each in accordance with the Plan; and

11.    provide that, if the Debtor's corporate existence has been cancelled prior to filing a motion for Final Decree, the Liquidating Trust is authorized to move for the Final Decree and to take all actions that are necessary and appropriate to secure entry of the Final Decree and close this Chapter 11 Case.

11.2    ***Conditions to the Effective Date***.

The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied or duly waived pursuant to Section 11.3:

(a)    the Confirmation Order, containing the Insurance Policy Injunction, shall have been entered by the Bankruptcy Court and become a Final Order;

(b)    the Debtor shall have obtained a legal opinion satisfactory in form and substance to the Debtor that the Internal Revenue Service will recognize the Liquidating Trust as a "designated settlement fund" or a "qualified settlement fund" under section 468B of the Internal Revenue Code and any related regulations;

(c)    the Liquidating Trust Agreement shall have been executed, and the Liquidating Trust shall have been established; and

(d)    the Liquidating Trust shall have been funded in accordance with Section 8.1(b).

11.3    ***Waiver of Conditions Precedent***.

To the fullest extent permitted by law, but subject to any Approved Insurance Settlement Agreement, the conditions to the Confirmation Date set forth in Section 11.1 and the conditions to the Effective Date set forth in Section 11.2 may be waived or modified in whole or in part at any time in writing by the Debtor, without leave from or an order of the Bankruptcy Court.

11.4    ***Effect of Non-Occurrence of Effective Date***.

If each of the conditions to the Effective Date is not satisfied in accordance with Section 11.2 or duly waived in accordance with Section 11.3, then upon notification to the Bankruptcy Court by the Debtor, after consultation with the Committee, and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court.  If the Confirmation Order is vacated pursuant to this Section 11.4, (a) the Plan shall be null and void in all respects; (b) the Debtor and all parties in interest shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (ii) prejudice in any manner the rights, including any claims or defenses, of any party in interest.

## SECTION 12
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, or related to the Chapter 11 Case including, among other things, jurisdiction to:

(a)    allow, disallow, determine, liquidate, classify, reclassify, estimate, or establish the priority, secured, or unsecured status (or proper Plan classification) of any Non-Asbestos Claim or Interest, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the allowance, priority, or classification of Non-Asbestos Claims or Interests;

(b)    hear and determine any motion, adversary proceeding, application, contested matter, and other litigation matter pending on or commenced after the Confirmation Date or that, pursuant to the Plan, may be instituted by the Liquidating Trust after the Confirmation Date, including any proceedings with respect to any Avoidance Actions (except to the extent that any such Avoidance Actions have been waived or released under the Plan or the Confirmation Order) or otherwise to recover all assets of the Debtor and property of the Estate, wherever located;

(c)    enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents, including the Liquidating Trust Agreement, entered into or delivered in connection with the Plan or the Confirmation Order, including compelling the conveyance of property and other performance contemplated under the Plan and documents executed in connection herewith;

(d)    resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or any contract, instrument, release, or other agreement or document that is entered into or delivered pursuant to the Plan, including the Liquidating Trust Agreement, or any Entity's rights arising from or obligations incurred in connection with the Plan or such documents;

(e)    resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine, and, if necessary, liquidate any Claims arising therefrom;

(f)    hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred before the Effective Date;

(g)    hear and determine any proposed compromise and settlement of any Claim against or cause of action by or against the Debtor that has been or properly should have been brought in the Bankruptcy Court;

(h)     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under section 505(b) of the Bankruptcy Code);

(i)     hear and determine any proceeding that involves the validity, application, construction, enforceability, or modification of the Insurance Policy Injunction;

(j)     enter such orders as are necessary to implement and enforce the Insurance Policy Injunction;

(k)     hear and determine any conflict or other issues that may arise in the administration of the Liquidating Trust and all objections to the termination of the Liquidating Trust;

(l)     hear and determine such other matters as may be set forth in or arise in connection with or relate to the Plan, the Confirmation Order, other orders of the Bankruptcy Court, the Liquidating Trust Agreement, or any other contract, instrument, release, or other agreement or document entered into or delivered in connection with the Plan or the Confirmation Order, as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(m)     hear and determine motions to approve an Insurance Settlement Agreement;

(n)     hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(o)     issue injunctions, enforce the injunctions contained in the Plan and the Confirmation Order, and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(p)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason or in any respect modified, stayed, reversed, revoked, or vacated or Distributions pursuant to the Plan are enjoined or stayed;

(q)     ensure that Distributions to holders of Allowed Non-Asbestos Claims are accomplished pursuant to the provisions of the Plan;

(r)     adjudicate any and all disputes arising from or relating to Distributions under the Plan;

(s)     enforce remedies upon any default under the Plan;

(t)     hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; and

(u)       enter a Final Decree closing the Chapter 11 Case.

## SECTION 13
## MISCELLANEOUS PROVISIONS

13.1    ***Modification of Plan***.

The Debtor may alter, amend, or modify this Plan, or any other Plan Document, under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date so long as this Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code or the Court has approved such modification.  After the Confirmation Date, the Debtor may alter, amend, or modify this Plan in accordance with section 1127(b) of the Bankruptcy Code but only before its substantial consummation.

On and after the Effective Date, the authority to amend, modify, or supplement the Plan Documents, other than the Plan, will be as provided in such Plan Documents.

13.2    ***Revocation or Withdrawal of the Plan***.

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be null and void in all respects; any settlement or compromise embodied in the Plan, including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests, any assumption or rejection of an Executory Contract or Unexpired Lease effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall:  (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of the Debtor or any Entity in any further proceedings involving the Debtor; or (c) constitute an admission of any sort by the Debtor or any other Entity.

13.3    ***Compromise of Controversies***.

From and after the Effective Date, the Debtor shall be authorized to compromise controversies not involving the Liquidating Trust or Asbestos Claims in its sole discretion on such terms as the Debtor may determine to be appropriate.

13.4    ***Payment of Statutory Fees***.

All fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid on the Effective Date, or as soon as practicable thereafter, by the Debtor. Following the Effective Date, the Liquidating Trust shall be responsible for quarterly fees owed to the U.S. Trustee in connection with this Chapter 11 Case.  Quarterly fees owed to the Office of the U.S. Trustee following the Effective Date shall be paid by the Liquidating Trust when due in accordance with applicable law, and the Liquidating Trust shall continue to file reports to show the calculation of such fees for the Estate until the Chapter 11 Case is closed under section 350 of the Bankruptcy Code.

13.5    *Prepayment*.

Except as otherwise provided in the Plan, the Plan Supplement, or the Confirmation Order, the Debtor shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; provided, however, that any such prepayment shall not violate or otherwise prejudice the relative priorities and parities among the Classes of Claims.

13.6    *Exemption from Transfer Taxes*.

Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all taxes as provided in such section 1146(a) of the Bankruptcy Code.

13.7    *Effective Date Actions Simultaneous*.

Unless the Plan or the Confirmation Order provides otherwise, actions required to be taken on the Effective Date shall take place and be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. Actions required to be taken after the Effective Date or as soon as thereafter as is reasonably practicable shall be deemed to have been taken on the Effective Date.

13.8    *Substantial Consummation*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

13.9    *Request for Expedited Determination of Taxes.*

The Debtor shall have the right to request an expedited determination under section 505(b) of the Bankruptcy Code with respect to tax returns filed, or to be filed, for any and all taxable periods ending after the Petition Date through the Effective Date.

13.10   *Reservation of Rights*.

If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Chapter 11 Case are and shall be reserved in full.  Any concessions or settlements reflected herein, if any, are made for purposes of the Plan only, and if the Plan does not become effective, no party in interest in the Chapter 11 Case shall be bound or deemed prejudiced by any such concession or settlement.  Moreover, if the Plan does not become effective, no party in interest in the Chapter 11 Case shall be bound or prejudiced by any representation, written or oral, made by any party in connection with the Plan or the negotiation or prosecution of the Plan, including, without limitation, the representations made in the Plan, the Disclosure Statement, or the Confirmation Order.

13.11  *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without giving effect to the principles of conflict of laws thereof.

13.12  *Computation of Time*.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

13.13  *Successors and Assigns*.

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, estate, successor, or permitted assign, if any, of each Entity.

13.14  *Exhibits/Schedules*.

All exhibits and schedules to the Plan, the Plan Supplement, and the exhibits and schedules to the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full herein.

13.15  *Entire Agreement*.

On the Effective Date, the Plan and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

13.16  *Severability*.

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.

13.17  *Inconsistencies*.

To the extent of any inconsistencies between the information contained in the Disclosure Statement and the terms and provisions of the Plan, the terms and provisions of the Plan shall govern.  To the extent of any inconsistencies between the terms and provisions of the Plan and

the factual findings and conclusions of law in the Confirmation Order, the factual findings and conclusions of law contained in the Confirmation Order shall govern.

13.18   *Notices*.

All notices, requests, and demands to or upon the Debtor or the Committee, to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered, and addressed as follows:

(a)    if to the Debtor:

ON Marine Services Company LLC
Attn: Kevin J. Whyte
11 Stanwix Street, 21st Floor
Pittsburgh, PA 15044

with a copy to:

Reed Smith LLP
Attn: Andrew J. Muha, Esq.
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222

(b)    if to the Committee:

[•]

13.19   *Further Assurances*.

The Debtor, the Asbestos Protected Parties, the Liquidating Trust, all Entities receiving Distributions under this Plan, and all other parties in interest shall, and shall be authorized to, from time to time, prepare, execute, and deliver any agreements or documents and take any other action consistent with the terms of this Plan as may be necessary to effectuate the provisions and intent of this Plan, with each such Entity to bear its own costs incurred after the Effective Date in connection therewith.

13.20   *Further Authorizations*.

Prior to the Effective Date, the Debtor may seek such orders, judgments, injunctions, and rulings that it deems necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, this Plan or any of the Plan Documents, and any costs incurred in connection therewith shall be borne by the Estate. On and after the Effective Date, the Debtor and the Liquidating Trust may seek such orders, judgments, injunctions, and rulings that any of them deem necessary to carry out further the intentions and purposes of, and to give full effect to the provisions of, this Plan or any of the Plan Documents, with each such Entity to bear its own costs in connection therewith.

Dated:  January 2, 2020                    Respectfully submitted,

                                           ON MARINE SERVICES COMPANY LLC

                                           */s/ Kevin J. Whyte*
                                           Kevin J. Whyte
                                           Senior Vice President Legal and Secretary